IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 23-CR-000142 |
| | ) | |
| v. | ) | |
| | ) | |
| CARL DALE MARKLEY | ) | DEFENDANT'S SENTENCING BRIEF |
| | ) | |
| Defendant. | ) | |

## **TABLE OF CONTENTS**

Page

I.   Introduction……....………………………………………………………………....……………..2

II.  Procedural History………....………………………………………………….……………...…..2

III. Current Sentencing Law………………………....……………………………………..............2

IV. Calculating the Starting Point………………………………………………………………..4

    A.   Criminal History Score……………………………………………………………………4

    B.   Advisory Guideline Starting Point……………………………………………………..4

V.  Sentencing Factors as Applied to Michael Jagim………………………....…….…….…4

    A.   The Sentencing Factors…………………………………………………………………4

VI. Recommended Sentence………………………………………………………………………..9

        A. Recommended Sentence…....……………………………………………………..9

**I.      INTRODUCTION**

Carl Markley respectfully submits this brief to assist the Court in fashioning a sentence that is "sufficient, but not greater than necessary" to achieve the statutory purposes of punishment set forth in 18 U.S.C. § 3553(a) and considering *U.S. v. Booker*, 543 U.S. 220 (2005).

**II.     PROCEDURAL HISTORY**

A 17-count indictment was filed on November 15, 2023. Markley pled guilty on November 26, 2024, to Counts One through fifteen of the indictment. The Court subsequently accepted the guilty plea.

Markley agrees with the probation office regarding the issues which must be decided in this case, as set forth in the summary on page one of the final PSR. Markley notes however, that the Probation Office's Response contained within the last paragraph on Page 200 of the Final PSR is concerning. The Probation Office reports that it contacted the Government regarding the Defendant's Objections to the offense conduct statement. The Probation Office is an extension of the Courts. It should be discussing, Ex Parte, the Defendant's Objections with the Government.

**III.    CURRENT SENTENCING LAW**

In Booker's remedial opinion the Supreme Court excised statutory provisions of law which made the United States Sentencing Guidelines mandatory. *Booker*, 543 U.S. at 258-265. Thus, the Guidelines are now only advisory in nature offering general advice to a sentencing court. *Rita v. U.S.*, 551 U.S. 338, 358 (2007). The calculated Guideline range is now simply the "starting point" or "initial benchmark" the Court should use in fashioning a sentence. *Gall v. U.S.*, 552 U.S. 38, 50 (2007). The Court is required to tailor the sentence in light of other statutory concerns. *Kimborough v. U.S.,* 552 U.S. 85, 101 (2007). That is to say that the

advisory Guideline's initial benchmark is to be filtered through the factors specified in 18 U.S.C. 3553(a). *Rita*, 551 U.S. at 358. Those factors include:

1) The nature and circumstances of the offense and the history and characteristics of the Defendant;

2) The need for the sentence imposed;

2) the kinds of sentences available;

3) the need to avoid unwarranted sentencing disparity; and

4) the need to provide restitution.

Id. 18 U.S.C. Section 3553(a)(1-3), (a)(6-7).

In considering these factors, the Court is not to presume that the "starting point" suggested by the Guidelines is reasonable. *Gall*, 552 U.S. at 50. The Court "must make an individualized assessment based on the facts presented." Id.

Moreover, the statutory factors in 18 U.S.C. 3553(a) do not provide the Court with the only basis to consider a sentence different from that suggest by the Guidelines starting point. The Court is also free to fashion a different sentence based solely on the Court's own policy disagreements with the Guidelines. *Kimborough*, 552 U.S. at 101; see also *Spears v. U.S.*, 555 U.S. 261 (2009).

In the end the Court must comply with the instruction contained in 3553(a) that the Court "impose a sentence sufficient, but not greater than necessary to accomplish the goals of sentencing…" *Id* (citations omitted). This can only be achieved if the sentencing judge, "consider[s] ever convicted person and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue. *Gall*, 552 U.S. at 52 (citations omitted).

## IV.   CALCULATING THE STARTING POINT

### A.  Criminal History Score

All parties agree that Markley is a criminal history category I with 0 criminal history points and no prior record.

### B.  Advisory Guideline Starting Point

Markley's only functional guideline dispute is whether the probation office whether he should receive credit for acceptance of responsibility and whether the Probation Office should have included enhancements for obstruction of justice in the final PSR. However, neither issue ultimately impacts the guideline range because Markley's Total Offense Level is a 43 under any calculation. Markley withdraws his objection to the inclusion of Count 16, as it is properly including for grouping purposes in 1B1.2(c).

## V.   SENTENCING FACTORS AS APPLIED TO CARL MARKLEY

### A.   The Sentencing Factors

18 U.S. Code § 3553(a) sets forth the factors to be considered in imposing sentence. Those factors can be summarized as follows, 1) the nature and circumstances of the offense, 2) the history and characteristics of the defendant, 3) the need for the sentence to reflect the seriousness of the offense, promote respect for the law and to provide just punishment, 4) to afford adequate deterrence, 5) to protect the public, 6) the provide the Defendant with needed rehabilitative services and 7) the guidelines and sentencing options available.

To begin with, however, Markley first addresses many of his numerous objections to the Pre-Sentence Report. As the Probation Office noted in its responses, many of the objections were adopted. However, many of the remaining objections deal primarily with the Government's characterization of facts. Undersigned Counsel spent a good deal of time reviewing the pre-

sentence report with Markley. The objections are Markley's. Many of Markley's objections regard the creative license with which the Government characterized Markley's actions throughout its offense conduct statement. This offense conduct statement and PSR are very long. Throughout, the Government seeks to characterize almost every action Markley took as some way related to his crimes. This is simply not the case. While Markley does not deny he committed these crimes, the Government goes to far in suggesting that almost everything he did had some role in the crimes.

      The nature and circumstances of these offenses are undoubtedly serious. Markley, for at least fifteen years engaged in a pattern of deception to convince mostly male of age persons to engage in almost exclusively consensual sexual activity, albeit consensually obtained by fraud. On the one hand, most of the individual victims suffered little in the way of actual physical or psychological harm. Some even profited to some degree from the activity. On the other hand, this does not excuse Markley's conduct. There is a question as to whether the nature of the conduct itself in this case makes it somehow less serious than if the perpetration had been more unwanted, violent or non-consensual and the victims had not received something of value in exchange. There is some merit to this idea. Markley was never violent and rarely ever engaged in conduct which the victim was not willing to engage in (albeit fraudulently obtained). Much of the conduct in this case, had it not been obtained by fraud, was more along the lines prostitution than sex trafficking as well.

      It is also worth noting that the Government asserts a vast number of victims without any real evidence that all of the claimed victims are in fact victims. Markley did thousands of physicals for the community and saw hundreds of patients. The vast majority of exams he conducted were perfectly normal and within the regular standards of the medical profession. The

Government argues as if everything Markley did while providing medical care was criminal. This just is not the case. That said the nature of the offense, number of victims and length of time is serious.

The history and characteristics of Carl Markley weigh in favor of mitigation. Markley has no criminal history. He has worked hard his entire life owning several businesses. In fact, one investigator described as one of the hardest working individuals he had ever met and wondered how he even had time to commit these crimes. Moreover, it is clear Carl was not an excellent student in school. Yet he went on to obtain multiple degrees. He has a loving and supportive family. He does not use drugs or alcohol. He also, did in fact, provide services to the community outside of his criminal conduct. He provided thousands of physicals, assisted with the special needs community and gave back to his community. Much of what Carl did was good, and contrary to the Government's position, not everything he did was directed at finding victims. Much of Carl's practice involved working for community-based services, from which not many of his victims came. As will be discussed subsequently, Carl's desire to help others was genuine.

A fact, not heretofore known to the Court, but known to Undersigned Counsel since the beginning of this case is that Carl was sexually abused as a child by neighbor whose lawn he mowed. Carl recalls being given something to drink while mowing this individual's lawn and subsequently waking up later without recalling what had happened to him. He did not realize he had likely been abused until the individual was subsequently arrested for abusing others. This has haunted Carl. While Carl speaks very little of this incident, and has only spoken of it twice to counsel, it clearly has had a profound impact on his life. Childhood Sexual Abuse is strongly correlated with subsequent offending by the victims of that abuse. See Childhood sexual abuse is

significantly associated with subsequent sexual offending: New evidence among federal correctional clients. Child Abuse & Neglect, Volume 95, September 2019, Drury et. al.

Factors 3, 4, 5, and 7 can be considered together as they are similar in nature. It is somewhat helpful to begin by looking at recent sentencing commission data. From October 1, 2022, through September 30, 2023, the commission reports that the mean sentence for "Sexual Abuse" was 213 months, and the median was 180 months[1]. See https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/quarterly-sentencing-updates/USSC_Quarter_Report_4th_FY23.pdf   Page 9, Table 6. In contrast for kidnapping the mean sentence was 200 month and the median 168 months. For murder the mean sentence was 285 months and the median was 270 months. Federal offenders of sexual abuse crimes were sentenced 38.6% of time within guideline range and 49.7% were given a variance. Id. Page 17, Table 10. Moreover, of all offenders in the Southern District of Iowa in that time span, 33.3% were sentenced to guideline sentences, while 50.3% were given a variance. Id. Page 15, Table 9. Thus, while Markley's guideline range is life, a downward variance would not be out of the norm.

Further, when considered in the context of sentences for kidnapping and murder, a sentence between 200-300 months seems appropriate. If an average sentence for kidnapping is 200 months, and that sentence achieves the purposes of sentencing, and likewise an average sentence of 285 months for murder also achieves the purposes of sentencing, surely a sentence in that range in this case, would also reflect the seriousness of the offense, afford adequate deterrence, promote respect for the law and provide a just punishment.

---

[1] These crimes would seem to fall in that category as Child Pornography is a separate category and Obscenity/Other Sex Offenses are a separate category.

More than anything, Markley clearly needs sex offender treatment and other psychological therapy. These therapies can be provided during his time in prison. Research is quite clear that clinical therapy and sex offender treatment drastically reduces the risk of re-offense. Moreover, Markley is in his mid-forties and by the time he is released he will be in his sixties. Sex offender recidivism falls sharply with age. He will also likely be under supervision for an extended period subsequent to his incarceration with strenuous conditions. Thus, a sentence between 200-300 months, which will encompass most of the rest of Markley's natural life, and all of his younger years, is sufficient to afford deterrence, protect the public, and promote respect for the law.

Finally, as touched on, the rehabilitative services Markley needs is psychotherapy and sex offender treatment. While there is no doubt Markley committed these crimes, there is an aspect to this case that is perplexing. Markley has many books on sexuality, safe sex, delayed ejaculation, gynecology, male sexual health, sexual health for physicians, anatomy, and a variety of other sexually related topics. All the books are clinical or informative. Markley wrote a paper in nursing school regarding pornography depicting nurses and doctors and its detrimental impact on the profession. He took classes in sexual health at various times. He studied these topics vociferously. There is very little indication that he ever received overt sexual gratification during these crimes. In fact, in interviews many of the victims described him as "professional". Many of the victims had no issues with what transpired until law enforcement, during their interviews, actually led them through suggestive questioning, into saying that they were upset, mad etc. While the Government may portray everything Markley did as for a sexual purpose, much of what Markley did, while sexual in nature, was not all that sexual. He can be seen in some videos performing an exam or massage and very casually masturbating a victim to completion and

proceeding immediately to clean up. All the while taking measurements etc. From the outside looking in, this can appear all vary devious, but Markley's history with male sexual health issues does suggest a real interest in the subject. An interest that may have been born from his own childhood sexual trauma, and which was in some ways intertwined into this conduct for which he is to be sentenced. That is to say there is some blend of actual interest in these topics and the abuse at issue. The Government would likely have the Court believe that Markley went to nursing school and obtained a Nurse Practitioner degree out of some continual devious plan to victimize people. The more likely scenario is that both his interest in sexual health, and his abusive behavior, were the direct result of his own abuse, and that his interest in male sexual health is genuine, and his desire to help is genuine, but that he could not divorce that from his abusive behavior. Thus, Markley needs sex offender therapy as well as trauma therapy.

### VI. <u>Recommended Sentence</u>

    A**.**   **Recommended Sentence** – 262 months.

As discussed above, the Court is to filter the Guideline starting range through the factors in 3553(a) to achieve a sentence which is sufficient but not greater than necessary to achieve the purposes of sentencing. In so doing, the Court is to consider the circumstances of each Defendant individually and not presume the reasonableness of the guideline range.

For all of the reasons discussed above, a 262-month sentence is sufficient in this case to achieve the purposes of sentencing. That is a sentence well above the average for sexual abuse crimes and kidnapping crimes, but slightly less than the average federal sentence for murder.

                                           Respectfully submitted,

                                           BABICH SARCONE, PLLC
                                           501 SW 7th Street
                                           Des Moines, IA  50309

Phone: (515) 244-4300

By: /s/ Nicholas Sarcone
Nicholas Sarcone
Attorney for Defendant,
Carl Markley

Original filed.

CERTIFICATE OF SERVICE

Served by e-filing on all parties on March 18, 2025

/s/ Nicholas A. Sarcone